**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

FEDERAL TRADE COMMISSION,

  Plaintiff,

v.

  PONTE INVESTMENTS, LLC, a limited
liability company, also d/b/a SBA LOAN
PROGRAM and d/b/a SBA LOAN
PROGRAM.com, and

  JOHN C. PONTE, individually and as an
officer of PONTE INVESTMENTS, LLC,

  Defendants.

**CASE NO. 1:20-cv-00177-JJM-PAS**

**MEMORANDUM IN SUPPORT OF A
TEMPORARY RESTRAINING ORDER,
AND OTHER EQUITABLE RELIEF, AND
ORDER TO SHOW CAUSE WHY A
PRELIMINARY INJUNCTION SHOULD
NOT ISSUE**

## I.    INTRODUCTION

The Federal Trade Commission ("FTC") moves this Court for a temporary restraining order ("TRO") and a preliminary injunction to stop Defendants Ponte Investments, LLC, also d/b/a SBA Loan Program and d/b/a SBA Loan Program.com, and John Ponte (collectively, "SBA Loan Program" or "Defendants") from deceiving small business consumers seeking financial relief from the devastating effects of the coronavirus pandemic.  SBA Loan Program has been misrepresenting that it is authorized to make loans under a new temporary Small Business Administration ("SBA") loan program referred to as the Paycheck Protection Program ("PPP").  SBA Loan Program is not authorized to make PPP loans, nor is it affiliated with or approved by SBA.  Struggling small businesses who have applied through SBA Loan Program instead of through the actual SBA loan program may have lost the chance to obtain these loans.

1

Defendants' actions violate Section 5 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45.

A TRO is needed to put an immediate stop to Defendants' unlawful conduct and to prevent ongoing injury to consumers. As discussed below, such relief is common in FTC matters.

## II. THE PARTIES

### A. Plaintiff

Plaintiff FTC is an independent agency of the United States government created by statute. 15 U.S.C. §§ 41-58. The FTC's responsibilities include enforcing the FTC Act's prohibitions of unfair or deceptive practices, 15 U.S.C. § 45(a).

### B. Corporate Defendant

Defendant Ponte Investments, LLC, also d/b/a SBA Loan Program and d/b/a SBA Loan Program.com, is a Rhode Island limited liability corporation founded in 2011 and headquartered in West Warwick, RI. Decl. of FTC Investigator Rufus Jenkins, attached as Plf's Ex. 1 (hereinafter, "PX1") ¶¶ 5, 11, 19. The Company's amended 2019 Annual Report describes the business conducted by the company as "SBA and other business loans arranged through third party providers and business consulting services." PX1 ¶ 21.

### C. Individual Defendant

Defendant John C. Ponte is a Rhode Island resident and the owner, managing member, and President of the Company. PX1 ¶¶ 10, 13-15, 31; Decl. of SBA Director of the Office of Credit Risk Management Susan E. Streich, attached as Plf's Ex. 2 (hereinafter, "PX2"), ¶¶ 8-9. In these capacities, he has the authority to control the Company's deceptive practices.

### III.   BACKGROUND ON EMERGENCY FEDERAL LEGISLATION PROVIDING SMALL BUSINESS RELIEF

The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), was enacted to provide immediate assistance to individuals, families, and businesses affected by the Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak.  CARES Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).  Small businesses, which typically cannot survive less than a month without incoming revenue, have particularly felt the damaging effects of the pandemic.[1]  These businesses have been struggling to retain employees and keep their doors open.

As a result, under the CARES Act, Congress created a new, temporary SBA loan program known as the Paycheck Protection Program or PPP.  Congress allotted $349 billion to this program, to run through June 30, 2020 or until the allotted funds are exhausted.  *Id.*, § 1102. The loans can only be made by SBA authorized lenders.  *See* Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. 20811 (Apr. 15, 2020).

Consumer demand for these loans has been extremely high.  Eligible small businesses can borrow up to $10 million with an interest rate of only one percent.  *Id.* at 8 & 11. Additionally, PPP loans may be forgiven if the proceeds are used for certain purposes.  *Id.* at 13-14.  As of Thursday, April 16, 2020, the $349 billion in PPP funding has been exhausted,[2]

---

[1] JP Morgan Chase & Co Institute, *Cash is King: Flows, Balances, and Buffer Days | Evidence from 600,000 Small Businesses*, JPMORGANCHASE.COM, https://www.jpmorganchase.com/corporate/institute/document/jpmc-institute-small-business-report.pdf (last checked Apr. 17, 2020); *see also* Emily Cochrane and Jim Tankersley, *With Demand Soaring, Congress Weighs Adding $250 Billion in Small-Business Aid*, N.Y. TIMES (April 7, 2020), https://www.nytimes.com/2020/04/07/us/politics/coronavirus-congress-small-businesses.html (citing JP Morgan Institute report).

[2] Andrew Duehren, *Funding Exhausted for $350 Billion Small-Business Paycheck Protection Program*, WALL STREET JOURNAL (April 16, 2020 7:20 PM),

though Congress is considering additional appropriations.[3]

### IV.    DEFENDANTS' DECEPTIVE AND UNLAWFUL BUSINESS PRACTICES

Defendants have violated Section 5(a) of the FTC Act, by misrepresenting SBA Loan Program's authority to make PPP loans and misrepresenting its relationship with SBA.

SBA Loan Program has made these claims in telephone calls, by e-mail, and on its website.  Decl. of FTC Paralegal Sarah Kerman, attached as Plf's Ex. 3 (hereinafter, "PX3") ¶¶ 7-10; Decl. of Small Business Consumer Michelle Harmon, attached as Plf's Ex. 4 (hereinafter, "PX4") ¶¶ 4 & 9; PX1 Atts. D-F.  For example, one small business consumer from Maine received a call from an SBA Loan Program representative stating the call was from the SBA. PX4 ¶ 4; *see also* PX3 ¶¶ 5-23 (describing complaint from Washington consumer who was led to believe SBA Loan Program was affiliated with SBA and provided his personal and business information).  The representative informed the consumer that SBA Loan Program was working with the consumer's bank and urged the consumer to apply now because the funds were limited and would run out soon. PX4 ¶ 6.  A second representative followed up by e-mail, representing "We are the SBALoanProgram.com and as mandated by the SBA, getting approved is easier than ever!"  PX4 ¶¶ 8-10, Att. A.  The e-mail additionally stated that SBA Loan Program "will be participating in obtaining you funding for this as well."  PX4 ¶ 11, Att. A.  When the consumer questioned SBA Loan Program's affiliation with SBA, she was told that "SBA Program was a subsidiary and that the SBA Loan Program would facilitate the loan."  PX4 ¶ 12.

SBA Loan Program's website also has misrepresented its authority to make PPP loans. Upon entering the website, an immediate pop-up screen has opened stating in large, all

---

https://www.wsj.com/articles/funding-exhausted-for-350-billion-small-business-paycheck-protection-program-11587048384?mod=hp_lead_pos6.

[3] *Id.*

capitalized font, "WE ARE A DIRECT LENDER FOR THE PPP LOAN PROGRAM!"  Compl.

Exs. A-B; *see also* PX1 Atts. D.  The "Application page" similarly has stated "We are a Direct

Lender for the Paycheck Protection Program."  *Id.*

While SBA Loan Program has collected over a thousand applications, PX2 ¶ 3, it does

not have the authority to make PPP loans.  PX2 ¶ 6-7, 10.  Indeed, SBA issued a cease and desist

letter on April 10, 2020, stating, "SBA does not have any record that Ponte Investments LLC is a

participating lender and SBA believes this assertion to be false."  PX2 ¶ 8, Att. A.  SBA

demanded that SBA Loan Program cease and desist from holding itself out to the public as an

SBA approved lender and requested that it immediately inform all businesses that have

submitted applications that it is not approved to make the loans.  *See* PX2 Att. A.  While

Defendant Ponte represented to SBA on April 13 that SBA Loan Program had changed its claims

on its website, *see* PX2 Att. B, Defendants have continued their misrepresentations.  On April

16, an FTC investigator made an undercover call to SBA Loan Program and was told, like other

consumers, that SBA Loan Program was a PPP lender.  PX1 ¶ 41-42.

## V.    A TEMPORARY RESTRAINING ORDER SHOULD ISSUE AGAINST DEFENDANTS

A TRO is needed to prevent continued harm.

### A.    This Court Has the Authority to Grant the Requested Relief

This Court has the authority to grant temporary, preliminary, and permanent relief

pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which states, "in proper cases the

Commission may seek, and after proper proof, the court may issue, a permanent injunction."[4]

---

[4] This action is not brought pursuant to the first proviso of Section 13(b), which addresses the circumstances under which the FTC can seek preliminary injunctive relief before or during the pendency of an administrative proceeding.  Because the FTC brings this case pursuant to the second proviso of Section 13(b), its complaint is not subject to the procedural and notice

Courts have recognized that any case alleging violations of a law enforced by the FTC constitutes a proper case for which the FTC may seek injunctive relief. *See, e.g., FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1233 (9th Cir. 1999). Section 13(b) preserves the Court's inherent authority to order not only permanent relief, but also to grant preliminary and ancillary equitable relief. *FTC v. Direct Marketing Concepts, Inc.*, 648 F.Supp.2d 202, 212 (D. Mass. 2009); *FTC v. Seismic Entm't Prods., Inc.*, No. CIV. 04-377-JD, 2004 WL 2403124, at *2 (D.N.H. Oct. 21, 2004). Here, where the public interest is at stake, exercise of the Court's broad equitable power is particularly appropriate. *FTC v. World Wide Factors*, 882 F.2d 344, 347 (9th Cir. 1989). Indeed, numerous courts nationwide have granted or affirmed injunctive relief similar to that requested here. *See infra*, at 12-13.

**B.      The Evidence Justifies Entry of a TRO**

Preliminary relief is appropriate in a Section 13(b) case when there is 1) a likelihood of success on the merits and 2) the balance of equities weighs in favor of the relief. 15 U.S.C. § 53(b); *Seismic Entm't Prods., Inc.*, 2004 WL 2403124, at *2; *World Wide Factors*, 882 F.2d at 346. Unlike private litigants, the government need not show irreparable injury because it is presumed in a statutory enforcement action, and thus, the Court "need only . . . find some chance of probable success on the merits" to grant an injunction. *World Wide Factors*, 882 F.2d at 347 (quoting *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 175-76 (9th Cir.

---

requirements in the first proviso. *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982) (holding that routine fraud cases may be brought under second proviso, without being conditioned on first proviso requirement that the FTC institute an administrative proceeding); *see also U.S. Oil & Gas Corp.*, 748 F.2d 1431, 1434 (11th Cir. 1984) ("Congress did not limit the court's powers under the [second and] final proviso of § 13(b) and as a result this Court's inherent equitable powers may be employed to issue a preliminary injunction, including a freeze of assets, during the pendency of an action for permanent injunctive relief").

1987)); *Affordable Media, LLC*, 179 F.3d at 1233.[5]  As set forth below, a TRO should issue in this case because the FTC is likely to succeed in proving Defendants are violating the FTC Act, and because the public interest favors entry of the requested relief.

### 1.    The FTC Is Likely to Succeed on the Merits

To demonstrate a likelihood of success on the merits, the FTC must show that it likely will prevail and need not present evidence to justify a final determination that Defendants violated the law, although the record abounds with such evidence.  *World Wide Factors*, 882 F.2d at 346 (FTC need only demonstrate "some chance of probable success on the merits"); *see also FTC v. Univ. Health*, 938 F.2d 1206, 1218 (11th Cir. 1991).  As discussed below, the FTC meets this requirement by showing that Defendants have violated and continue to violate Section 5 of the FTC Act.  The FTC also can demonstrate that Individual Defendant Ponte is liable for the acts of the corporate Defendant SBA Loan Program.

### a.    Defendants Are Violating Section 5 of the FTC Act.

The elements of Section 5 deception are (1) a representation or omission, (2) that would likely mislead consumers acting reasonably under the circumstances, (3) that is material.  *FTC v. Direct Marketing Concepts, Inc.*, 569 F.Supp.2d 285, 297-8 (D. Mass. 2008) (citing cases).  The Court is not confined to analyzing isolated words and phrases, but must consider the overall "net impression" that Defendants' representations make upon consumers.  *Id.*; *Removatron Int'l Corp. v. FTC*, 884 F.2d 1489, 1497 (1st Cir.1989) (looking to "common-sense net impression" of an

---

[5] Although not required to do so, the FTC also meets the test for private litigants to obtain injunctive relief.  Defendants' victims are suffering irreparable injury.  Consumers who have applied to SBA Loan Program instead of through true SBA authorized lenders may not have received loans, while those who have applied through authorized lenders have exhausted the funds allotted under the CARES Act.  PX2 ¶ 10; *see supra* at 3 & n. 2.  To the extent Congress makes additional funds available, *supra n. 2*, consumers who have applied with SBA Loan Program instead of authorized lenders will lose out on those funds as well.

advertisement).  An advertisement may be "likely to mislead by virtue of the net impression it creates even though [it] contains truthful disclosures." *FTC v. Cyberspace.com LLC*, 453 F.3d 1196, 1200 (9th Cir. 2006).  A representation is likely to mislead consumers when either it is false or the maker lacked a reasonable basis for the claim.  *Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d at 298.  A claim "is material if it 'involves information that is important to consumers and, hence, likely to affect their choice of, or conduct regarding, a product.'" *Fanning v. FTC*, 821 F.3d 164, 172 (1st Cir. 2016) (citing *Kraft Inc. v. FTC*, 970 F.2d 311, 322 (7th Cir. 1992) (quoting *Cliffdale Associates, Inc.*, 103 F.T.C. 110, 165 (1984)).  Express claims are presumed material, so consumers are not required to question their veracity to be deemed reasonable.  *Id.; FTC v. Colgate-Palmolive*, 380 U.S. 374, 391-92 (1965).  The FTC has demonstrated that it is likely to succeed in demonstrating the three elements of deception.

First, as discussed above, Defendants hold themselves out as "SBA Loan Program," have told consumers they are from the SBA, and have obtained consumers' information based on that pretense.  *See supra* at 4.  They also have claimed repeatedly to be a PPP lender.  *Id.* at 4-5. SBA Loan Program's website prominently references the "CARES Act Paycheck Protection Program" in large bold font, and its online application similarly touts "Paycheck Protection Program" and "CARES Act Paycheck Protection Program." [6]  Compl. Exh. A & B; *see also* Compl. Exh. C (claiming "we are currently offering stimulus relief funding under the Economic

---

[6] At the bottom of the application page beyond the "Submit" button, gray small-print text against a white backdrop states: "We are not the US Government, If [sic] you wish to apply for a Disaster Relief Loan follow this link to the SBA website www.sba.gov/disaster. The Paycheck Protection Program is not provided by the SBA."  Compl. Exh. B and C.  Fine-print disclaimers do not cure Defendants' deceptive representations. *See Removatron Int'l Corp.*, 884 F.2d at 1497; *Fanning*, 821 F.3d at n. 7; *Cyberspace.com*, 453 F.3d at 1200.  Even if a consumer located this text, the language does not disclose that SBA Loan Program is not authorized to make PPP loans.  Moreover, Defendants make no disclosures in their telephone calls or emails to consumers.

Security Act (Cares Act)").  Second, these claims are likely to mislead consumers because Defendants are not affiliated with the SBA, nor do they have the authority to make PPP loans. PX2 ¶¶ 6-7, 10.  Indeed, SBA issued a cease and desist letter, stating, "SBA does not have any record that Ponte Investments LLC is a participating lender and SBA believes this assertion to be false."  PX2 ¶ 8.  SBA demanded that Ponte Investments cease and desist from holding itself out to the public as an SBA approved lender and requested that it immediately inform all businesses that have submitted applications that it is not an SBA approved lender.  PX2 ¶ 8, Att. A.  Yet, Defendants have continued their misrepresentations.  PX1 ¶ 39-42.

Third, both claims are material, not only because they are express, but also because small business consumers would not have applied through SBA Loan Program if they knew that Defendants would not obtain for them the promised PPP loans.  Thus, the FTC is likely to prevail in showing that Defendants violate Section 5 of the FTC Act.

### b.      Defendant Ponte Is Liable for Injunctive Relief.

The FTC is likely to prevail in showing that Defendant Ponte is liable for corporate Defendant SBA Loan Program's practices.  To obtain an injunction against an individual, the FTC must show that the individual 1) was a corporate officer with the capacity to make decisions regarding the challenged conduct, and (2) knew or should have known that there was no reasonable basis for the deceptive claims.  *FTC v. Direct Marketing Concepts, Inc.*, 624 F.3d 1, 12 (1st 2010) (citing *FTC v. Publishing Clearing House, Inc.*, 104 F.3d 1168, 1170 (9th Cir.1997); *see also United States v. Bldg. Inspector of Am., Inc.*, 894 F. Supp. 507, 518 (D. Mass. 1995).  It is not necessary to show that the individual personally made the misleading or deceptive representations.  *Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d at 310.  In general, an individual's status as an officer or authority to sign documents gives rise to a presumption of

liability to control a small, closely held corporation. *Publishing Clearing House*, 104 F.3d at 1170-71. Further, assuming the duties of a corporate officer is probative of an individual's participation or authority. *FTC v. Amy Travel Servs., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989); *FTC v. Five-Star Auto Club*, 97 F. Supp. 2d 502, 538 (S.D.N.Y. 2000).

Though the FTC does not seek monetary relief among this requested relief, Defendant Ponte has the requisite knowledge to be held liable for such relief under the FTC Act. The knowledge element need to not rise to the level of subjective intent to defraud consumers. *Direct Marketing Concepts, Inc.*, 569 F. Supp. 2d at 310 (citing *Amy Travel*, 875 F.2d at 573); *Affordable Media*, 179 F.3d at 1234; *Amy Travel*, 875 F.2d 574. Instead, the FTC need only demonstrate that the individual had actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of such representations, or an awareness of a high probability of fraud, coupled with the intentional avoidance of the truth. *Affordable Media*, 179 F.3d at 1234. Participation in corporate affairs is probative of knowledge. *Id.*, at 1235; *Amy Travel*, 875 F.2d 564.

Here, the FTC is likely to succeed in showing that Defendant Ponte's conduct satisfies the standard for individual liability. *See Direct Marketing Concepts, Inc.*, 624 F.3d at n. 10 (recognizing individual liability for a founder and president). Ponte is the managing member, President, and owner of SBA Loan Program. PX1 ¶¶ 10, 13-15, 31; PX2 ¶¶ 8-9. He was responsible for forming SBA Loan Program in 2011 and has been involved in its operation since then. PX1 ¶¶ 5-15. Ponte's name has appeared on corporate documents, PX1 ¶¶ 13-15 and phone numbers associated with SBA Loan Program, PX1 ¶¶ 33-35. In addition to being an officer and owner of the corporate Defendant, Ponte received SBA's cease and desist letter and sent SBA Loan Program's initial response. PX2 ¶¶ 8-9.

**2.    The Equities Weigh in Favor of Granting Injunctive Relief**

The public interest in halting Defendants' unlawful conduct outweighs any interest Defendants may have in continuing to unlawfully market their services. In balancing the equities between the public and private interest, "public equities receive far greater weight." *FTC v. Warner Comms., Inc.*, 742 F.2d 1156, 1165 (9th Cir. 1984). The public interest is especially strong in the context of enforcement of consumer protection laws. *FTC v. Mallett*, 818 F. Supp. 2d 142, 149 (D.D.C. 2011). And, because Defendants "can have no vested interest in business activity found to be illegal," a balance of equities tips definitively toward granting the requested relief. *United States v. Diapulse Corp. of Am.*, 457 F.2d 25, 29 (2d Cir. 1972) (internal quotations and citation omitted); *CFTC v. British Am. Commodity Options Corp.*, 560 F.2d 135, 143 (2d Cir. 1977) ("A court of equity is under no duty 'to protect illegitimate profits or advance business which is conducted illegally.'") (citing *FTC v. Thomsen-King & Co.*, 109 F.2d 516, 519 (7th Cir. 1940)).

The evidence demonstrates that the public equities—protection of consumers from Defendants' unlawful scheme and effective enforcement of the law—weigh in favor of granting the requested injunctive relief. Small businesses face devastating consequences if Defendants are not enjoined. Small businesses that are misled into believing that Defendants will provide them with PPP loans may permanently shutter, let go of their employees, and create a significant strain on the economy. Defendants' continued misleading conduct despite the SBA cease and desist letter indicates that they will likely continue to deceive the public absent such relief. *Five-Star Auto Club*, 97 F. Supp. 2d at 536 ("[P]ast illegal conduct is highly suggestive of the likelihood of future violations.").

11

In contrast, any private equities are not compelling.  "[T]here is no oppressive hardship to Defendants in requiring them to comply with the FTC Act [and] refrain from fraudulent representation."  *World Wide Factors*, 882 F.2d at 347.   Indeed, "the public interest in preventing further consumer deception outweighs [d]efendants' private interest in continuing to advertise and market its products and services in the same manner."  *See John Beck Amazing Profits, LLC*, 2009 WL 7844076, at \*16; *FTC v. City W. Advantage, Inc.*, 2008 WL 2844696, at \*6 (D. Nev. July 22, 2008) (noting that "[t]here is no hardship to [defendants] in requiring them merely to follow the law-to refrain from making misrepresentations to consumers they contact").  Because the injunction will preclude only harmful, illegal behavior, the public equities supporting the requested injunctive relief outweigh any burden imposed by such relief on Defendants.

**C.        The Scope of the Relief Sought Is Necessary and Appropriate**

The FTC requests that the Court grant a TRO prohibiting Defendants from making any misrepresentations; preventing release of consumer information without consumers' express, informed consent;[7] requiring consumer notification;[8] preserving evidence;[9] and reporting future business activity.[10]

---

[7] Prohibiting disclosure of consumer information deceptively or unfairly attained does no more than prevent Defendants from benefiting from consumer information and require compliance with the FTC Act. The prohibitions are consistent with the Court's broad equitable authority under Section 13(b) of the FTC Act to grant ancillary relief necessary to accomplish complete justice. *Direct Mktg. Concepts, Inc.,* 648 F. Supp. 2d 202, 212 (D. Mass. 2009); *Singer,* 668 F.2d at 1113; *Five-Star Auto Club, Inc.* 97 F. Supp. 2d at 532-39.

[8] As discussed above, consumer victims are unaware of Defendants' unlawful misrepresentations and therefore, are unable to protect themselves. Notification will give consumers an opportunity to apply for federal or other relief elsewhere to keep their businesses afloat.  Such relief is warranted and well within the Court's authority.  *FTC v. Virginia Homes Mfg. Corp.*, 509 F. Supp. 51, 55 (D. Md. 1981), *aff'd*, 661 F.2d 920 (4th Cir., July 14, 1981) (unpublished) (holding "compulsory notice is implicitly authorized by section 13(b) so long as such notice would be

These measures are squarely within the Court's broad equitable authority under Section 13(b) of the FTC Act "to grant any ancillary relief necessary to accomplish complete justice." *See Direct Mktg. Concepts, Inc.*, 648 F. Supp. 2d at 212, *aff'd*, 624 F.3d 1 (citing *Five–Star Auto Club, Inc.,* 97 F.Supp.2d at 533). Courts nationwide have routinely granted the FTC emergency relief in similar cases, including issuing TROs with even broader relief than the FTC requests here. *See* n. 7-10 (citing and discussing cases entering specific forms of relief); *see also FTC v. Simple Health Plans LLC*, No. 18-cv-62593, Dkt. 15 (S.D. Fla. Oct. 31, 2018) (granting TRO requiring asset freeze, appointment of a receiver, repatriation of assets, immediate access to defendants' premises, and barring misrepresentations where defendants claimed to be government sponsored); *FTC v. HITE Media Group, LLC*, No. 18-cv-02221-SPL, Dkt. 14 (D. Ariz. July 17, 2018) (granting TRO requiring asset freeze, asset repatriation, appointment of a receiver, immediate access to defendants' premises, and barring misrepresentations when defendants claimed that consumers would likely receive government grants); *FTC v. Bob Robinson, LLC*, No. 17-cv-02411, Dkt. 12 (S.D. Tex. Aug. 8, 2017) (granting TRO requiring asset freeze, asset repatriation, appointment of a receiver, immediate access to defendants'

---

essential to the effective discharge of the court's responsibilities"); *FTC v. Southwest Sunsites, Inc.* 665 F.2d 711, 722-3 (5th Cir. 1982) (same); *FTC v. Travel King, Inc.,* 1974 WL 809 (W.O. Wash. Feb. 22, 1974); *see also* 15 U.S.C. § 57b (providing the Court with the authority to "grant such relief as the court finds necessary redress injury to consumers," including but not limited to "public notification respecting the rule violation or the unfair or deceptive act or practice").

[9] It is appropriate to enjoin Defendants from destroying evidence and doing so would place no significant burden on them. *See SEC v. Unifund SAL,* 910 F.2d 1028, 1040 n.11 (2d Cir. 1990) (characterizing such orders as "innocuous").

[10] This provision is regularly entered by courts issuing TROs so that Defendants are deterred from immediately re-starting operations under a different name. *See, e.g.*, *FTC v. AH Media Grp., LLC*, Case No. 19-cv-04022-JD, Doc. No. 26 (N.D. Cal. July 18, 2019); *FTC v. Worldwide Executive Job Search Solutions, LLC*, Case No. 4:19-cv-00495, Doc. No. 18 (S.D. Tex. Feb. 22, 2019).

premises, and barring misrepresentations where defendants misrepresented work-at-home opportunities as marketed).

## VI.     CONCLUSION

Defendants are harming consumers by deceptively touting that SBA Loan Program is approved to make PPP loans.  The FTC respectfully requests the Court issue a TRO with the above-described relief in order to protect the public from further harm and help ensure effective relief for those already harmed.


Dated: April 17, 2020                             Respectfully submitted,


                                                  /s/ Daniel Dwyer
                                                  THOMAS J. WIDOR
                                                  D.C. Bar No. 490184
                                                  SANYA SHAHRASBI
                                                  D.C. Bar No. 1671001
                                                  DANIEL DWYER
                                                  California Bar No. 286701

                                                  Federal Trade Commission
                                                  600 Pennsylvania Ave., NW, CC-10232
                                                  Washington, DC 20580
                                                  (202) 326-3039 (Widor)
                                                  (202) 326-2709 (Shahrasbi)
                                                  (202) 326-2957 (Dwyer)
                                                  twidor@ftc.gov
                                                  sshahrasbi@ftc.gov
                                                  ddwyer@ftc.gov
                                                  Fax: 202-326-3768